IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02887-RBJ

BARBARA E. COAST,

    Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

    Defendant.

---

ORDER

---

    This matter is before the Court on review of the Commissioner's decision denying plaintiff Barbara Coast's application for disability insurance benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court on April 25, 2013 upon plaintiff's filing of a reply brief. The Court apologizes to the parties and counsel for its delay in addressing the case.

**Standard of Review**

    This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards."

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

*Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Procedural History**

Ms. Coast applied for disability benefits on September 14, 2009. She alleges she first became disabled on November 24, 2007 when she was diagnosed with bipolar disorder. Ms. Coast's date last insured was September 30, 2009. Her application was denied by the Social Security Administration on April 30, 2010. Ms. Coast then requested a hearing before an administrative law judge (ALJ), and the ALJ held a hearing on February 17, 2011. On April 22, 2011, ALJ Burgchardt issued an opinion denying benefits, and the Appeals Council denied Ms. Coast's request for review on September 5, 2012. Thereafter Ms. Coast filed a timely appeal with this Court.

**Facts**

Since 2002, Ms. Coast has struggled to maintain a job. R. 309. Over the last several years she has worked as a sales representative and has earned some money as a freelance artist. R. 36-37. No one disputes that Ms. Coast has not been gainfully employed since her alleged onset date of November 24, 2007. Ms. Coast has also been stressed by her divorce and recent financial trouble including the loss of her health insurance. R. 30, 35.

Mental Impairments

In 2002, Ms. Coast began receiving treatment from a psychiatrist, Dr. Honie B. Crandall, during a period when Ms. Coast was struggling to keep her job. R. 309. Ultimately, Dr. Crandall diagnosed bipolar disorder. This diagnosis is "manifested by mood swings including immobilizing depression, hopelessness, complete lack of energy and motivation alternating with hypomania with scattered thoughts, emotional lability, and insomnia." *Id.* Dr. Crandall also observed "frequent bouts of severe anxiety with panic episodes" and believes that while medication has been helpful it fails to fully control these symptoms. *Id.*

On January 20, 2011, Dr. Crandall filled out a mental impairment questionnaire indicating that Ms. Coast is markedly impaired in activities of daily living, moderately limited in social functioning, extremely limited in concentration, persistence, or pace, and suffers repeated episodes of decompensation within a twelve month period with each episode lasting at least two weeks. R. 350. This document was introduced at the hearing as Exhibit 17F, and Dr. Crandall confirmed that it accurately described Ms. Coast's symptoms before September 30, 2009 (her date last insured). R. 45-46.

Dr. Crandall's treatment notes over the last several years reflect Ms. Coast's fluctuating symptoms. During some visits, Ms. Coast was unable to focus and maintain concentration, (R. 362-63), suffered from "severe mood swings with thought disorganization and waves of hopelessness," (R. 310), or was suicidal, (R. 308, 332). At other times, however, her thoughts were more organized and appropriate, and she had positive energy. R. 329.

At the hearing before the ALJ, Ms. Coast testified that her bipolar disorder in combination with her vision impairment (described below) caused her to curtail certain activities.

For example, she testified that while she was able to do basic chores like cleaning and doing laundry, (R. 38-39), she painted less and stopped going to the gym after the length of her commute increased, (R. 32-33).  She also testified about occasional social outings with her book club or the local Water Color Society, although she also suggested it was difficult for her to attend these gatherings.  R. 34.

        Physical Impairments

In January of 2008, Ms. Coast presented to Dr. Jonathan G. Williams complaining of floaters and loss of vision in her right eye.  R. 269.  Dr. Williams diagnosed a retinal detachment and recommended surgery.  *Id.*  A scar developed after the surgery that caused symptoms similar to macular degeneration.  R. 278.  Medication to treat these symptoms stabilized but unfortunately did not correct Ms. Coast's vision.  *Id.*

According to Dr. Ryan M. Rich, Ms. Coast's treating ophthalmologist, the scarring and associated symptoms limited her vision, "impl[ying] legal blindness" and probably causing the "complete loss of stereo vision and deterioration of her depth perception."  *Id.*  Dr. Rich concluded that this condition could affect her activities of daily living.  *Id.*  In January of 2011, Dr. Rich filled out a vision impairment questionnaire that concluded Ms. Coast could rarely do work involving near acuity, never do work involving depth perception, and occasionally do work involving far acuity and field of vision.  R. 352-54.  Ms. Coast testified at the hearing that her vision impairment led her to avoid certain types of driving and to give up on her artwork and hiking.  R. 33-35.  Finally, throughout Ms. Coast's medical records there is evidence of other documented physical problems, none of which appear to be independently severe.  R. 232-34, 239-42, 243-46 (documenting fibromyalgia, degenerative disc disease, and thyroid problems).

<u>ALJ's Opinion</u>

The Social Security Administration uses a five part process to determine whether a claimant qualifies for disability insurance benefits. At step one, the ALJ determined that Ms. Coast had not engaged in substantial gainful activity since November 24, 2007 (her alleged onset date). At step two, the ALJ found that Ms. Coast suffered from the following severe impairments: bipolar disorder and reduced vision in the right eye due to the scar caused by surgery to repair a retinal detachment. R. 13. She also found the following non-severe impairments: degenerative disk disease, hypothyroidism, and hormone replacement therapy. *Id.*

At step three, the ALJ determined that none of these impairments—alone or in combination—met or medically equaled one of the listed impairments. The ALJ compared Ms. Coast's impairments to the listing for affective disorders. According to the regulations, affective disorders are

> [c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." And "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 [hereinafter Listing 12.04].

The ALJ concluded that Ms. Coasts' severe impairments nonetheless did not meet or equal a listing because they failed to satisfy the B and, alternatively, the C criteria under Listing 12.04. R. 14. The paragraph B criteria require that the impairment result in at least two of the following: "(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration."

Listing 12.04. Alternatively, a claimant can prove listing status without meeting the standards under paragraphs A and B if the claimant meets the criteria in paragraph C: A "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of several additional factors. Listing 12.04.

The ALJ interpreted Ms. Coast's continuing ability to cook, clean, shop, visit the gym, drive, do laundry, and paint to mean she only suffered a mild restriction in her activities of daily living. She further reasoned that Ms. Coast's ability to attend book club meetings a couple of times per month and her attendance at art openings implied only a mild limitation in her social functioning. And finally, the ALJ concluded that because Ms. Coast testified to difficulty in completing tasks due to poor concentration she suffered from a moderate limitation in concentration, persistence, and pace. R. 16. As a result, she could not meet at least two of the B criteria. The ALJ ruled that alternatively Ms. Coast could not satisfy criteria C. She found no evidence in the record of any of the three elements making up criteria C.

At step four, the ALJ noted that Ms. Coast is unable to perform any of her past relevant work, but the ALJ nonetheless decided that Ms. Coast had a residual functional capacity ("RFC") to do work at all exertional levels with some non-exertional limitations. Specifically, the ALJ found Ms. Coast capable of doing simple, unskilled work with a specific vocational preparation of one or two but, due to her vision impairment, she should not perform conveyor belt work from right to left. In reaching this conclusion, the ALJ decided that Ms. Coast's testimony regarding her limitations lacked credibility, and the opinions of two treating physicians were given little weight. The RFC did not include any of Ms. Coast's non-severe physical limitations nor did it

reference the restrictions included in Dr. Crandall's mental impairment questionnaire.  At step five, the ALJ asked a vocational expert to opine about the employment opportunities available to a hypothetical person with the residual functional capacity assigned to Ms. Coast.  The expert indicated that such a person would be able to find employment in the national economy, and accordingly, the ALJ concluded that Ms. Coast was not entitled to disability benefits under the Act.

**Analysis**

Ms. Coast identifies several alleged errors in the ALJ's decision, many of them overlapping and interrelated.  Boiled down to their simplest form, her arguments are that (1) the ALJ improperly weighed certain medical evidence in the record, (2) the ALJ erred when she decided Ms. Coast's testimony lacked credibility, and (3) at step four the ALJ neglected to consider the full range of Ms. Coast's limitations in arriving at a residual functional capacity assessment.  This Court finds that the ALJ failed to engage in the proper analysis of medical evidence from Ms. Coast's treating physicians and remands for further proceedings.  Reevaluating the medical evidence may change the ALJ's decision regarding residual functional capacity at step 4.  In any event, the Court also agrees that no matter how the ALJ comes out regarding the opinions of Ms. Coast's treating physicians, the analysis under step four must be redone including all of Ms. Coast's impairments including the exertional impairments that the ALJ determined to be non-severe.

<u>The Weight of the Treating Physicians' Opinions</u>

As mentioned above, at step three, the ALJ concluded that Ms. Coast's impairments, while severe, did not meet or equal a listed impairment.  Ms. Coast argues that in reaching this

7

conclusion, the ALJ improperly evaluated the opinions of her treating physicians.[2] This Court agrees and holds that the ALJ failed to perform the requisite analysis before concluding that some opinions were entitled to little weight and others ought to be discounted entirely.[3]

Treating physicians' opinions are generally given controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). However, before assigning a treating physician's opinion controlling weight, "[a]n ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1300). Next, the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and should be weighted using the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927. *Robinson*, 366 F.3d at 1082 (quoting *Watkins*, 350 F.3d at 1300). The factors to be considered are:

---

[2] To be sure, Ms. Coast presents this argument under her challenge to the ALJ's residual functional capacity determination under steps 4 and 5, but it applies with equal force to the ALJ's evaluation of the medical evidence at step 3. The ALJ explicitly combined her analysis of the paragraph B criteria under steps three and four: "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 14. As a result, the decision about what weight to assign the opinions of Ms. Coast's treating physicians impacted both steps.

[3] The Commissioner suggests that Ms. Coast has failed to "put flesh on the bones" of her argument that she meets or equals a listing under step three, and thus this Court ought to find that argument waived. Gov't Br. 10 (citing *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) and *United States v. Zannino*, 895 F.3d1, 17 (1st Cir. 1990)). This argument is unpersuasive, and the argument is not waived. Ms. Coast makes an adequate (and persuasive) argument in her briefs that the ALJ improperly discounted the opinions of her treating physicians. Because the low weight assigned to these opinions contributed to the ALJ's conclusion that Ms. Coast did not meet or equal a listing, the argument is preserved.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1301). Although an ALJ should consider all of these factors, it is not necessary that she explicitly discuss every factor. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).

An ALJ must give specific reasons for the weight assigned to a treating physician's opinion so that subsequent reviewers can determine the weight assigned and the reason for that weight. *Watkins*, 350 F.3d at 1301. If an ALJ rejects a treating physician's opinion completely, she must then "give specific, legitimate reasons for doing so." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301).

Moreover, the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability. *Robinson*, 366 F.3d at 1083. Finally, "[t]he sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

In Ms. Coast's case, the ALJ ultimately discounted the opinions of Dr. Crandall and Dr. Rich because they were inconsistent with the treatment notes prepared by those doctors and also conflicted with Ms. Coast's testimony regarding her activities of daily life. R. 17. I agree that Ms. Coast's testimony about taking care of her own household, occasional driving, and occasional social events might constitute substantial evidence in the record regarding her activities of daily life. The ALJ could therefore conclude that such evidence conflicted with the unanimous opinions of Dr. Crandall and Dr. Rich that Ms. Coast suffered from marked

9

impairment in her activities of daily life. Therefore, the ALJ did not err by deciding to give less than controlling weight to the opinions of Dr. Crandall and Dr. Rich in light of the inconsistency between their opinions and Ms. Coast's testimony.

However, after making that decision, the ALJ neglected to engage in further analysis of the opinions. Even where a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Watkins*, 350 F.3d at 1300. While she was not required explicitly to discuss every factor, *see Oldham*, 509 F.3d at 1258, it is unclear from the opinion whether any of these factors was considered at this stage. Factors 3 and 4, specifically, seem like they would be especially helpful in this context given that there seems to be substantial medical evidence supporting Dr. Crandall and Dr. Rich's opinions, even if there might be contradictory evidence as well.

Essentially, as far as the ALJ's decision shows, she collapsed together the decision not to give the opinions controlling weight with the decision to give them "little weight." R. 17. There is no further discussion about why these opinions were unpersuasive. That is particularly troublesome in light of the extensive medical evidence provided by both physicians and the possibility that Ms. Coast's bipolar disorder entails variable, fluctuating symptoms, explaining why she would have occasional episodes of relatively unimpaired functioning. Pl. Reply Br. 7-8.

Failure to provide a more explicit analysis of these opinions before deciding not to defer to them is reversible error. *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4) ("[A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is

not entitled to 'controlling weight,' not that the opinion should be rejected."). Indeed, some of the information contained in Dr. Crandall's opinion changed the vocational expert's conclusions. In response to a hypothetical question regarding the jobs available to a person matching the description of Ms. Coast on Dr. Crandall's mental impairment questionnaire, the vocational expert testified that no work existed for such a person in the national economy. R. 51.[4] Because the ALJ needed to weigh medical evidence unfavorably in order to determine Ms. Coast's RFC, express analysis of that evidence is particularly important. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Because the ALJ failed to provide additional analysis regarding what weight to assign the treating physicians' opinions after she decided not to give them controlling weight, this Court must remand the case. On remand, the ALJ should discuss any of the applicable six factors enumerated in *Watkins* in a way that allows reviewing courts to understand specifically why she assigned little weight to these opinions.

Credibility of Ms. Coast's Testimony

Ms. Coast also argues that the ALJ erred by making a determination that Ms. Coast's testimony regarding her limitations lacked credibility. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by

---

[4] The ALJ pointed out that "[t]he assessment prepared by Dr. Crandall located at Exhibit 16F was prepared after the expiration of claimant's date last insured and was vague about the date the alleged limitations were effective. Therefore, this assessment was given little weight." R. 17 n.1. While Dr. Crandall did prepare notes in Exhibit 16F, the context of the ALJ's statement suggests the she meant to refer to Exhibit 17F which contains the mental impairment questionnaire. Dr. Crandall testified at the hearing that the conclusions contained within Exhibit 17F applied to Ms. Coast's condition prior to September 30, 2009 (her date last insured). R. 41, 45-46. Therefore while the document itself may be vague about the applicable dates, the evidence is clear.

substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In this case, the ALJ weighed Ms. Coast's testimony about her limitations due to bipolar disorder and vision impairments against her testimony regarding her activities (household tasks, occasional driving, and occasional social engagements, for example). It is not this Court's role to reweigh this evidence, and therefore the ALJ's credibility determination regarding Ms. Coast's testimony will not be disturbed.

<u>Inadequate Residual Functional Capacity Determination at Step Four</u>

Ms. Coast argues that the ALJ lacked substantial evidence to find that there were other jobs in the national economy that she could perform. This alleged failure resulted from overlooking the combined effect of Ms. Coast's non-severe, exertional impairments at step four.[5]

At step four, the ALJ determines the claimant's residual functional capacity and uses that determination at step five to decide whether jobs exist in the national economy that the claimant can perform. *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988). To establish that jobs exist in the national economy, the Commissioner may pose hypothetical questions to a vocational expert about a person with characteristics similar to the claimant and ask what jobs might be available to such a hypothetical individual. However, "such inquiries must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 531 (10th Cir. 1995). Moreover, even non-severe impairments need to be considered at every step of the disability determination process. 20 C.F.R. § 404.1523 ("we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately,

---

[5] Ms. Coast styles this as a challenge to the ALJ's hypothetical questions to the vocational expert at step five. This Court, however, agrees with the government [#14 at 15 n.9] that Ms. Coast is actually challenging the ALJ's residual functional capacity assessment at step four.

would be of sufficient severity"); *see also Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (failure to consider all impairments is "reversible error"); *Langley*, 373 F.3d at 1124-25.

In this case, the ALJ identified the following non-severe impairments at step two: back and shoulder problems, degenerative disc disease, hypothyroidism, and menopausal symptoms. R. 13. The only time the ALJ mentioned any of these non-severe impairments in her step four analysis was to repeat her step two conclusion that "claimant's allegations regarding back and shoulder injuries were previously addressed as non-severe." R. 15. There is no mention at all of the degenerative disc disease, hypothyroidism, or menopausal symptoms.[6] Impairments, even if they are not severe, must be included in a residual functional capacity assessment. 20 C.F.R. § 404.1523. Ignoring these issues makes it impossible to determine whether the RFC complied with the regulations and presented an accurate picture to the vocational expert. For example, jobs identified by the expert involve "occasional stooping and frequent reaching, handling, and fingering." Dictionary of Occupational Titles, Selected Characteristics of Occupations 239.567-010, 211.462-010, 299.677-010. On review, this Court cannot be sure the expert would have identified these jobs if the RFC properly contained all of Ms. Coast's impairments.

**Remedy**

Ms. Coast urges this Court to remand her case with an order for immediate award of benefits, or in the alternative to remand the case to the ALJ for further fact-finding. "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding

---

[6] The Commissioner argues that the ALJ did not err in ignoring these physical impairments because Ms. Coast's attorney stated at the hearing that Ms. Coast did not "have a physical limitation that we're referring as an impairment" other than the vision problems. R. 27-28. This Court is not convinced that Ms. Coast's attorney was suggesting that his client's exertional limitations did not exist, merely that he did not intend to argue they should lead to a finding of severity by the ALJ. But in any case, what matters is not what the attorney said, but what the ALJ found. And because she concluded those allegations were non-severe impairments, they must be considered throughout the disability determination process.

13

would serve no useful purpose." *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987). The Court acknowledges that this case has languished for some time now, but unfortunately it cannot be said that additional fact finding would serve no useful purpose. The ALJ must engage in the requisite analysis before this or any other court can engage in meaningful review. *Watkins*, 250 F.3d at 1301 (10th Cir. 2003).

### Conclusion

After examining the ALJ's opinion, the record, and briefing from both parties, I am convinced that the ALJ should have provided a detailed explanation of the factors that led her to not only decline to give controlling weight to the opinions of Ms. Coast's treating physicians but to then decide that they were unpersuasive. Furthermore, any residual functional capacity assessment must include all the impairments identified by the ALJ, even those non-severe exertional impairments referenced in the ALJ's decision.

### Order

The decision of the Commissioner is reversed. The case is remanded to the Commissioner for further proceedings before the ALJ.

DATED this 21st day of January, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge